## Sutton Estate

530

*May, Grove, Stork & Rubin,* for petitioners.

*Zimmerman, Zimmerman, Myers & Gibbel,* for remaindermen.

*Charles V. Snyder, Jr.,* for Attorney General.

BOWMAN, P. J., July 27, 1967.—We have before us the petition of Olive Sutton Caley, Mary Sutton Groves and Mildred Sutton Breneman, life beneficiaries of the residuary trust under the will of J. Paul Sutton, deceased, for a rule on the Lancaster County Farmers National Bank, the corporate trustee under the will, to show cause why the corpus of the trust should not be invaded to the extent of $4,000 for the purpose of erecting a greenhouse at the rear of decedent's home (situate on and known as 1130 Wheatland Avenue, in the Township of Lancaster, Lancaster County, and being a part of the trust corpus) "and for the initial expenses of a gardener". The corporate trustee refused the requested invasion of principal on the ground that the expenditure was not within the purview of testator's will. The invasion of the trust corpus is also opposed by St. Joseph's Hospital, to whom the income is payable upon the death of the life beneficiaries for the charitable purposes set forth in the will.

J. Paul Sutton died December 16, 1963, survived by neither spouse nor issue. The dispositive provisions of his will pertinent to the question now before us are as follows:

"ITEM III. I give, devise and bequeath all the rest, residue and remainder of my estate of whatsoever nature and kind and wheresoever the same may be at the time of my death unto my Trustees, hereinafter named, IN TRUST, nevertheless, for the following uses and purposes:

"(A) To keep and maintain as a residence for such of my sisters as desire to live therein amicably and together, subject to all other terms and conditions of this my last Will and Testament, my residence 1130 Wheatland Avenue, Lancaster Township, Lancaster County, Pennsylvania. This real estate shall never be sold so long as any of my three sisters, to wit, Mildred Sutton Breneman, Olive Sutton Caley and Mary Sutton Groves, are living and desire to live therein. This cost of maintenance shall include repair, maintenance, replacement, taxes, upkeep and insurance.

"(B) To pay annually to the Trustees of Zion Evangelical Lutheran Church, of Broad and Lemon Streets, East Petersburg, Lancaster County, Pennsylvania, the sum of Twelve ($12.00) Dollars annually for the upkeep of the Sutton Burial lot in their cemetery.

"(C) To pay over all of the remaining net income therefrom unto my two sisters, Olive Sutton Caley and Mary Sutton Groves, in the following proportions:

"(1) One-third ($\frac{1}{3}$) thereof to Olive Sutton Caley;

"(2) Two-thirds ($\frac{2}{3}$) thereof to Mary Sutton Groves.

"In the event of the death of either of my sisters, Olive Sutton Caley and Mary Sutton Groves, the entire income shall be paid to the survivor of them for and during the term of her natural life. Upon the death of the survivor of my herein named sisters, I direct my

Trustee surviving to apply the said income for the benefit of my sister, Mildred Sutton Breneman, as long as she lives in order to provide for her comfortable maintenance, care and support.

"(D) In case the total income of any of my sisters, accruing to her from all sources, should not be sufficient, in the sole and uncontrolled discretion of my hereinafter named corporate Trustee alone, for her proper maintenance, care and comfort, to pay over and use so much of the corpus of the herein created trust estate as may be deemed necessary by the corporate Trustee alone for the proper maintenance, care and comfort of such sister or sisters. The income hereinabove provided for my sisters shall be paid in quarter-annual installments or oftener, if necessary".

By item VIII, testator appointed his sisters, Olive Sutton Caley and Mary Sutton Groves, and the Lancaster County Farmers National Bank trustees of the residuary trust. Mary Sutton Groves died since the filing of the petition (she died April 19, 1967) and by a decree entered by this court on June 2, 1967, Olive Sutton Caley was removed as cotrustee.

It is the contention of petitioners that the corporate trustee may properly make the requested expenditure out of the principal of the trust by virtue of paragraph (D) of item III of the will, which provides that if the income accruing to petitioners from all sources is insufficient for their proper maintenance, care and comfort, the trustee is authorized to use so much of the corpus as it may deem necessary "for the proper maintenance, care and comfort of such sister or sisters".

From the record and testimony submitted at a hearing (petitioners did not personally appear and testify) held on the petition, at which the Attorney General of the Commonwealth as parens patriae was represented by counsel, we find that the principal awarded to the residuary trust by adjudications filed July 29, 1965,

and July 6, 1967, includes real estate valued at $41,-000 (of which $35,000 represents the value of the Wheatland Avenue property) and securities and cash aggregating $195,321.40.*

Mildred Sutton Breneman is 93 years of age, virtually blind, and by reason of a hip injury walks with difficulty. Olive Sutton Caley is 85 years of age. Neither of the remaining life beneficiaries is physically capable of doing any work in connection with the greenhouse, and the testimony is to the effect that a full-time gardener will have to be employed for that purpose. Barbara A. Dunlap testified in behalf of petitioners as to their interest in plants and gardening. She conceded that the erection of a greenhouse on the home property of decedent was a luxury, not essential for their care, but that it might add to their comfort.

Under the terms of the will, it is only when the total income of decedent's sisters accruing from all sources is insufficient is the principal to be invaded, and then only for the "proper maintenance, care and comfort" of his sisters. The invasion of the principal for such purposes is predicated upon a determination by the corporate trustee.

Involved in the matter now before us is whether or not the corporate trustee in resisting the invasion is displaying an abuse of discretion. In determining that question, we must consider whether the power to invade principal is unlimited or is subject to definite and ascertainable limitations.

In Glauser Estate, 350 Pa. 192, testator authorized his trustees to "pay and advance" to his wife certain

---

* United States estate tax was paid in the amount of $60,814.19, a refund of which is sought, and securities valued at $6,800 were impounded in the hands of the executors pending the determination of the estate tax liability.

amounts of principal for her "proper support, comfort or welfare". The trustees made a payment in fulfillment of an agreement by the wife to pay testator's debt. In holding that such an invasion of principal was improper, the court stated, at page 205:

"We think the testator, by using the words 'proper support, comfort or welfare,' intended exactly what the words import. . ."

In the matter now before us, we cannot construe the word "proper" as an isolated word. In our opinion, it qualifies or restricts not only the provision for maintenance but also for care and comfort.

The position of the life beneficiaries, as stated in their petition, is that the true meaning of "proper maintenance, care and comfort" presupposes "a wide standard not subject to definite fixed objective limitations". We have carefully considered the will before us and we are unable to construe it as creating the wide standard alleged by petitioners.

What the total income of decedent's sisters accruing to them from all sources is has not been shown either by the pleadings or by the testimony. While the age of the surviving life beneficiaries may not be determinative of the question involved, it is not without significance in considering whether or not the trust should be invaded in the manner proposed by them. We have carefully considered the testimony and the will and have reached the conclusion that the proposed invasion of the corpus of the trust is not a proper expenditure within the provisions of the will. In so holding, we find no abuse by the corporate trustee of the discretion vested in it by the will.

And now, July 27, 1967, the request of the life beneficiaries is denied and the petition is dismissed.